May it please the Court, I'm Katherine Lewis and I'm appearing on behalf of the petitioner, Hani al-Mutarrab. Mr. al-Mutarrab was ordered removed in absentia despite the uncontested fact that he never received the notice to appear, which contained the notice of hearing and important advisals. This Court must reverse the Board's decision denying his motion to reopen for at least two important reasons. First, the immigration judge was not authorized to conduct the in absentia proceeding since Mr. al-Mutarrab did not receive the NTA. And second, even if the IJ had been authorized to conduct the in absentia hearing, the plain language of the Immigration and Nationality Act requires reopening, quote, if the alien demonstrates that the alien did not receive notice, end quote. Here, the government concedes that Mr. al-Mutarrab had no actual notice of his removal proceedings. INA 240B5A authorizes the IJ to conduct an in absentia removal proceeding only if the alien was provided notice of the hearing at the most recent address provided under Section 239A1F. The Board explained in matter of GYR that, quote, the notice requirements leading to an in absentia order cannot be satisfied by mailing the notice to appear to the last known address of the alien when the alien does not receive the notice. Kagan. All right. But then there are these exceptions of constructive receipt, and then we have a later case in which there was a delivery to the house which wasn't accepted and it was returned. Is that the facts of the other case, MD or something like that?  All right. So what is the difference between somebody, a certified letter being delivered to a house and rejected where the government then knows that it's been rejected and somebody who has it sent to a post office box and doesn't get it either and doesn't pick it up so it goes back? Is that the same thing? Is that essentially rejecting it? You know, I think it's actually different. I would argue that the matter of MD case decided by the Board should not be relied on by this Court. In that case, they don't even get to the issue of whether it was a 239A1F address. They don't really address the plain language of matter of GYR in that case, which basically says if an alien doesn't receive the notice, they said an address that doesn't become a Section 239A1F address unless the alien receives the warning and advisals contained in the notice to appear. So did the MD decision just not deal with GYR? Does it cite GYR? It does cite GYR. It does cite to it. And it tries to distinguish it by saying, well, it was the correct address and therefore it was dispositive. It wasn't. I'm sorry. It was. They say because it was the correct address, that's the dispositive issue, whereas in matter of GYR, it's unclear what the correct address was in that case. But they also don't account for this other language. There's kind of a two-prong thing, whether the judge was allowed to enter the in absentia order to begin with, whether it was sent to this proper address. And then the second issue about 240B5C, when the person, the alien is actually attempting to reopen the proceedings, they have to demonstrate they did not receive notice. And the statute is clear about received notice. And in that matter of MD case, they don't deal with this plain language of the statute at all. They just don't, you know, account for that. But isn't the thrust of your argument, Counselor, that one can have an attorney who sends the government the notice of where to send the stuff, and the government uses that notice to send it, and sends it by certified mail, and he just doesn't need to go pick it up, and therefore, he will never get the notice? Isn't that the thrust of your argument? That's not the thrust of the argument, Your Honor. It's actually, in this case, you know, there's evidence that the certified mail was unclaimed. But we don't know why it was unclaimed. Well, we do know he didn't go pick it up. That's what a former attorney told us. He didn't go get it. Well, I think, you know, the reference in the brief says he failed to get it. But we don't know why. And it's clear from his declaration that he never received anything from the admiration. What difference does it make? If it's sitting there, and he doesn't go get it, and it went to the exact address the attorney sent it to, the attorney told the government to send it to, all you're to do is look at the second prong that's described in the case that you want us to look at, and say the GVR case, and say that's a Category 2 situation, and therefore, we shouldn't have a problem. But my colleague's question is what I think pretty significant, because why is this any different than the person who is sitting at home who gets this stuff and refuses it, and then we found that's enough? There's not evidence that this ---- We didn't find the PIA. Sorry. There's not evidence that, you know, what exactly happened with the receipt slip, you know, where that was placed with the ---- I guess there are two other differences here that I'd like you to address. One of them is that they did, in fact, have another address for him, because  Right. But the second is they had his lawyer's address. And what about the fact that they didn't mail it to his lawyer? Well, I mean, I think in this case, you know, the lawyer did ---- he filed the change of address, and he said explicitly in the letter, you know, please also include me on this. And there are regulations that say when an alien is represented that the attorney shall be served with the notice. But that's only true in certain circumstances, right? Yeah, I mean, there are ---- It doesn't apply to every piece of paper that goes out. Right. There is some conflict. But again, I think, you know ---- It frankly doesn't appear in the regulations dealing with this specific problem. Right. But there's still an issue about, you know, the fact that this attorney had entered his appearance. And even if you find that there is constructive notice here, the fact is he didn't actually receive notice, and he was making every attempt to comply with immigration authorities. And if you look at the Second and Seventh Circuit cases that are cited in the 28J letter, they show that if, you know, they look at the plain language of the statute and say we have to look at actual notice, and then, you know, also did the ---- it was the alien attempting to thwart delivery. Why do you say that the regulation doesn't apply to the circumstance? What about serving the lawyer? There's a provision that says whenever you have to give somebody notice to be served with any paper, it shall be given by or served upon or made by a request of the attorney or representative of the person or the person himself if unrepresented. So why didn't they have to serve the lawyer? They knew he was represented. Well, right, and that's our argument, is that under the regulations ---- You agreed before that there's no regulation that applies to this. Why is that? No, I don't. I may be misspoke. But, no, the regulation 292.5a ---- Right. 292.5a, right? Yes. We would ---- I argue that that absolutely should apply in this case. But there is some conflict in the regulations regarding notice to appear being served. Because there's another regulation that says or. Right. Exactly. But, you know, I'd argue here that it says whenever a person, and that language should be ---- And so or could be taken to mean just if they're represented. In other words, or is there because the person may not be represented. This thing covers the situation where he is represented. Right. And I would argue that that's the correct reading, that this ---- And certainly it's the way we run the world in general, and there would be a good reason for doing it. It's because you don't get into all these complications. Yes. And, you know, here it's clear he's represented. His attorney filed the G28. Is there any case law at all on this question, on the question of whether they have to serve a lawyer? There's the Gibrata v. INS case. It's a slightly different ---- That was from a different time period. Exactly. So it's not particular under this set of ---- this kind of case, because it deals with an OSC. The last thing that would be helpful to me for you to address is whether one also reaches ---- I mean, you also have an argument, as I understand it, that there's simply no way on the face of things that this person could have been removed on the papers that he was removed on. Now, is that reachable at this juncture? Yes, Your Honor. I believe it is, because the board made a ruling on this decision. And if a person is not, in fact, removable, it would be, you know, simply unjust to say that we can uphold this removal order against them. And the board did rule on it. So it seems to be assuming ---- and it's a little ---- the statutes are a little weird this way, because it appears that the question of whether he's removable doesn't seem to be appealable to the board ordinarily. But it does seem to be reviewable in court. And so ---- but in this instance, it was only the board that made the ruling. It's very odd. But in any event ---- It is an odd structure, and it is because of the way the motion to reopen in absentia provision is worded. It says, you know, you're ---- But also because we had a remand in this case, didn't we? We did. It was ---- there was stipulated remand when it was previously before the Ninth Circuit back to the board. And, you know, I would say that the ---- you know, either that that issue should be sent back to the immigration judge to determine in the first instance, since it's unclear on the factual issue what exactly the immigration judge's decision was, or that this Court can review, you know, if this Court exercises authority to review the issue of removability, that the government hasn't met its burden because they simply cite to the asylum application that was, you know, filled out by a person who doesn't speak English, and it was filling out the application pro se, and the board points to just an omission in that application. And while that might be an inference about whether or not he attended this college, just an omission can't ---- But isn't the real problem that it doesn't cover the ---- that the NTA doesn't cover the right time period, and that there's no evidence as to whether he attended college for the time period covered by the NTA? Right. And that ---- And it wouldn't even be relevant to anything anyway? Exactly. And so that's also, as we say in our brief, that, you know, it says from August 20, 1999 to present, and therefore, there's just simply no way that the government has met the burden of establishing that factual allegation and proving removability in this case. If you want to reserve time ---- I would like to, Your Honor. Thank you. May it please the Court. Patrick Bumate for the United States. When an NTA does not reach the intended alien, someone is clearly at fault, either the alien, the service, or possibly the postal service. In situations where the NTA is sent to the wrong address, we try to determine if the service was an error for administrative purposes or if the alien failed to apprise the service of his correct address, and whether he was aware of the consequences of the failure to update the service. Therefore, we look at who's at fault and whether or not they should be blamed for it. Well, you have a circular problem, because it's the NTA itself that gives the notice of being ---- of the awareness of the consequences. So that's why GYR is a funny case, because it first says you can't impute that knowledge to him if he doesn't actually get it. And on the other hand, it says sometimes we are going to do it even though he doesn't actually get it. That's correct. And GYR is an interesting case, but I think it's distinguishable from the case before us, because that's a case where it was the NTA was sent to the wrong address. But the fact remains that we know he did not actually get it, and we know he therefore never did get notice of the consequences. We know that much, right? That's correct. He did not receive the notice. And don't you really have to deal with the problem that he never got the notice because the statute requires that he get that notice before anything can be done? Respectfully, I disagree that the statute requires that he gets the notice. The relevant portion of the statute is INA 240b-5a. The first sentence sets out the predicates for when a removal ---- He's in ---- the alien has to get notice of certain consequences, right? Not under the statute, actually. With that 24 ---- 240b-5a states, first, the first sentence ---- Wait a minute. Two what? 240b-5a, which is also ---- Okay. Go ahead. So the first sentence sets out the predicates for when a removal in absentia is appropriate. One, when there's written notice provided, and two, when the alien does not attend the proceeding. The next sentence is the relevant ---- What does that mean, when written notice is provided? That's what the next sentence addresses. The next sentence says, quote, the written notice by the Attorney General shall be considered sufficient for purposes of this paragraph if provided at the most recent address provided under Section 1229a-1f of this title. So by those very words, it's not what the statute is concerned about. This is the sufficiency of notice and whether the notice is provided. No, but the question is whether this was a 239a-1f address. Right. Well, the way the statute works is that it's saying that a 229a-1f address is sort of the safe harbor for notice. If it goes to that address, then we definitely know that notice was sufficient. But the statute does not say that that's the only way to get to that safe harbor. The statute doesn't say that that's the only ---- Well, what should the statute say is another way? Well, if we look at the board's interpretation of the statute in NREA MD, it says that if it's sent to the correct address, then that's also sufficient notice, that the alien is charged with receiving the notice. Well, that's what it says, but how does that square with the language and with the statute? It squares with GYR perfectly in that GYR was very clear in stating that if the alien can be properly charged with receiving notice, then he's effectively served. It says, quote, if the notice to appear reaches the correct address but does not reach the alien through some failure in the internal workings of the household, the alien can be charged with notice. MD is basically giving full breadth to that part of GYR. GYR is really about the case where the NTA was sent to the wrong address. MD is the case where the NTA is sent to the right address. And did they know in GYR that it was sent to the wrong address? They just didn't know. Well, it was in contention. In GYR, it probably was sent to an address that the ---- that was probably wrong because the address is 6 years old. It was a scale address. But there's two other factors here. One is that they had another address for this guy, that is, actual address. Yes. And the second is that they had a lawyer's address. And why wouldn't they ---- why doesn't the regulation ---- first of all, ordinarily if somebody is represented, you serve their lawyer. And the regulations seem to say that. So why wasn't that the problem? Well, respectfully, I would say that this Court does not have jurisdiction to entertain that question. That question was not addressed in the IJ, before the IJ or the BIA. And in the ---- in this Court, in SALTA v. INS, had that issue squarely on and declined to entertain that question, where the question of whether or not service to the alien's attorney negated effective service. And therefore, this Court declined to rule on that issue. However, if you are inclined to look at the case, I would say that the general rules of regulatory construction state that where there's a specific statute or a specific regulation, and there's a general ---- that conflicts with the general statute or regulation, the specific would win. Yeah, but I ---- as I understand the specifics, they're saying you have to serve the person or the lawyer, meaning if there's a lawyer, the lawyer, or at least a certain output to the interpretation. If there's a lawyer, the lawyer, if not the person. I mean, in other words, and then you have another regulation that says if somebody is represented by a lawyer, you serve the lawyer, which seems to confirm that. So why are they in conflict? I don't see the conflict. The conflict is in the generalized statute, which is 295-2.5a. That just refers to any motion, any hearing, any type of motive. Right. But what I'm talking about is 8 CFR 1003.13, and that deals specifically with NTAs. Okay. But what does it say? It says that in the case of an NTA, it has to go to the alien or the alien's attorney. So or is very important. So therefore, in this case, the INS followed the regulations exactly. They did nothing wrong. Well, you're making an assumption, which is a different assumption than what I'm making, which is that or means whatever you want, as opposed to depending on the circumstances. Right. And I would say that the regulation is the floor of what proper service is. And in this case, they met that floor. They did not go below the floor. All right. What about the last question, which is the merits question? The merits question. Can we reach the merits question? Is there any reason we can't? I think you can reach the merits question after you. So why isn't it just on its face wrong? I mean, there's just no evidence that about the NTA charge, which is that he didn't attend classes from August 1999 forward. I mean, I understand that it's not clear why that matters, but that was the basis for the removal, and there's no evidence of it. I think there's substantial evidence here. There's no evidence of it. There's evidence that he didn't attend classes. Maybe there's evidence, it's far out of the vague, that he didn't attend classes before that. But for the after we're talking about a time period that's after the hearing, so how could there be evidence of it? Well, actually, there was also an asylum interview that occurred after the expiration of the of after August 20th, 1999. So therefore, he had ample opportunity to correct that misstatement if it was a misstatement. And, you know, this case has been in the courts for seven years. Which misstatement?  Which misstatement? Well, if in fact he did attend court. That's not the point. The point is that the charge in the NTA is for the wrong time period. It doesn't cover the time period that his visa was. Well, no, I would disagree with that. I mean, it says that he did not attend school from August 20th, 1999 to the present. At that point, on August 20th, 1999, his F-1 visa was expired. So therefore, he clearly was not complying with the terms and conditions of his status. So what evidence is there in the record that he didn't attend classes at the college from August 1999 forward? Well, you can make an assumption that since he did not attend college, I believe on August 17th, 1999, that he did not attend college. That's the best you can do. No evidence. Well, I think what the brief points to is that one of his papers, the only period of the only education he said he had was before he came to this country. That's correct. So you can draw a negative. I think your position was you could draw a negative inference from that. But that's a pretty far stretch, isn't it? That's all there is. I mean, are you saying there's something more than that in the record? I mean, I think, number one, it's kind of difficult to prove a negative. I mean, you're asking the INS to prove that he never attended school. Well, but that's what you're saying. That's the charge. Well, yes. And if you look at the asylum application. If you don't want to prove a negative, don't make a negative charge. The asylum application doesn't state that he went to school. He had an obligation to truthfully state. When was the asylum application submitted? I believe it was August 17th. Okay. So how could it cover the question of even if we assume that up until that point he didn't attend classes here, how does it cover the period covered by the NTA? It doesn't. Well, first of all, he had an asylum interview that occurred after the relevant time period, after August 20th. That doesn't matter. He didn't have to correct anything that wasn't alleged. What was alleged was that he didn't attend classes after August 30th, 1999, and there's no evidence of it. Is there any evidence of that? Even this very vague evidence that's in the application, because the application was filed before that. There is a – I mean, I think the asylum application is very strong evidence that he did not attend because at – During the relevant time period? What is it? I mean, it would be an obvious corollary that if you're not attending school on August 17th, that you're not attending school on August 20th. Well, first of all, that's entirely wrong because that's when classes start ordinarily in college. So if you were going to start going to classes, it would probably be right in that time period. I'm not sure exactly when. That might be correct. I'll defer to you on that. But I – The question I have, counsel, is we have quite a bit of precedent in our circuit that suggests that the application itself, being put together by someone who really doesn't know English, doesn't have much to do or much knowledge of what's in there, we don't give the application a whole lot of significance even in a credibility situation. Why should I give the application in this situation significance? Because in the credibility situation, if the application is different from what they testify, that alone can't be enough. Right. I would say that under 8 CFR 208.3c1, an application, an asylum application can be, quote, satisfied, quote, any burden of proof in exclusion to deportation or removal proceedings. If we look at the asylum application, it clearly states he didn't go to school, and that could be used as a reference that he wasn't complying with his F-1 student – I think that that particular regulation, if you will, goes directly to my colleague's questions. That particular application was filled out at a time which does not even fit with the time deadline in the NTA. And that's the problem that we have. You cite the regulation for that particular idea, but I'm suggesting you're trying to draw an inference from this application which goes more to what the time period is not even covered by it, and yet I cannot even suggest that the stuff in the application is enough for a credibility determination. Sure. That's my worry. That's understandable. But if you don't want to defer to the IJ's factual determination that he did not attend school during the relevant period – There's just no evidence on it. I'm sorry? I just don't see it. So let me ask you a question. Suppose – does it make any difference if we thought that this was – there was simply no evidence, even facially? What's the remedy? What happens then? Does she prevail or because it was all an absentia, is there a remand? Are there different consequences depending on whether we decided that there was no notice or we decided there was no evidence, or what? Sure. If you find that there is no evidence, which I think if you grant the BIA and the defense it's due, you can support – you can say that there is substantial evidence to support that. I think you could focus on the fact that his F-1 visa was also expired, which is clearly uncontested. But we can't do that. I mean, we couldn't possibly do that. I mean, you could do it. You could probably start an NTA all over again, but we can't do that. I'm sorry? We can't do that. We can't go and find him removable on a ground that you didn't find him removable on. We just can't do that. I think the NTA was sufficient grounds to say – was – provided sufficient that he was removable for purposes of being passed due his expiration of his visa. The NTA directly – But you again – You only – You lead us in a situation where the NTA doesn't say anything about it, the IJ didn't say anything about it, and now on appeal we're to hypothesize a ground on which he can be removed and then say he's removable? That's what you're arguing? What case says that I can do that? Well, I think you could just defer to the factual findings of the IJ. Well, you know, the only charge that the NTA makes – and I'm reading it now – you did not attend Contra Costa Community College from August 20, 1999 to the present, which is April 3, 2001. That's correct. That's the only charge it makes. And that charge is sufficient? So that's the only charge on which, you know, that we can sustain, right? If we can't sustain that, I mean – That charge includes the charge that he's passed due on his visa. August 20, 1999 is the date that he – How does it include that? Because August 20, 1999 is the date that – There's no charge that says that. I'm sorry? I mean, that's not charged in the NTA. I think it's sufficiently noted in the NTA that – I mean, the reason why the NTA chose the date August 20, 1999, that's the date that his visa was expired. It doesn't say that in the NTA. It says you were admitted on such-and-such a date, and you were admitted as a nonimmigrant to attend Contra Costa. That's all it says. I think it's close enough in that it puts the – Close enough? In the sense that the purpose of the NTA is that it puts the Petitioner or the alien on notice of what the charges are. And in this case, by stating the date, August 20, 1999, that's putting him on notice that you are passed due also. But if he had attended Contra Costa Community College from August 20, 1999 to the present, your position is he was still removable. That's correct. So this can't possibly be noticed to him that the problem is his running out of the visa, because it says the problem is that you didn't attend community college from August 20, 1999 to the present. I think you could read both charges into that sentence. All right. Let's suppose we didn't want to do that. I'm trying to get to the remedy issue, all right? Sure. Let's assume that we thought that this was just no good as to substance. What is the remedy at that point? Is the remedy that we simply find the removal order, we grant the petition, we say the removal order is no good, and you guys have to start all over again from day one doing a new NTA? Or is the remedy that there's a remand to have the hearing that was never held? Or what is the remedy? If I'm past my time. Yes, please answer. I would say that the remedy, if the court found that the BIA decision was not supported by substantial evidence, I think that the proper remedy would be a remand back to the BIA, and then that the BIA would get to determine whether or not. But ordinarily, in other words, if this wasn't an absentia case. Right. And there was no evidence to sustain the removal order, we would simply grant the There are many instances in which we remand. But if there's an order based on a record and there's no evidence to sustain it, that we simply vacate the remand order and it's over. Right? I mean, the removal order. No one goes back again. There's nothing to remand because it's all over. The question is, is there something special about this because it was an absentia order? Yeah. I mean, it might be the case that you would not vacate the removal order, because if, since it was an absentia case, I mean, if we went, if the idea were allowed to have removal proceedings, some of these facts would be flushed out more. Well, that's true, and that's why I'm asking the question. I'm trying to find out, is there any case law that you know about, about, with regard to an absentia order where there is not substantial evidence to sustain the removal order? I apologize, Your Honor, I do not know that. All right. Thank you very much. Thank you. Well, what about this notion now that the government puts forward that, well, the NTA is close enough because you know what the visa says, and if you didn't attend college during that time, then you know you're out of compliance with your visa, so you're subject to removal. What's wrong with that? Your Honor, I think that's far too attenuated. And they specifically made factual allegations, and the regulations specify a way that they can amend those allegations, and there are certain procedures and they didn't follow any of those procedures. And if they'd chosen to do that, then they could have followed the regulations. But doesn't that lead to the conclusion that in this context that the right remedy is a remand? Because essentially, I mean, they were sort of deprived of the opportunity of having a hearing, too, by your client not appearing. And almost surely if your client had appeared and there were a hearing, this all would have been straightened out. Your Honor, they opted to move and to proceed in absentia. They could have opted to admin close the case or move for continuance in order to try to reissue, you know, resend. And instead, they decided to submit on the at that time just the asylum application. They could have potentially gotten more evidence from Contra Costa Community College. They could have gotten the visa petition if they wanted to support the charge of removability, which is very important. The problem is that the sentient is just a mistake because the date in it is just irrelevant to anything. It doesn't matter whether he attended Contra Costa Community College from August 20th, 1999 to the present because his visa was forth before August 20th, 1999. And after August 20th, 1999, he doesn't have any business being here at all. So they just screwed up. I also don't know that they have necessarily proved that even his visa expired at that time. So I don't know that the asylum application itself actually proves that. While there is one section on the asylum application, it says the date the visa expires, just from practice in immigration law, there's a difference between when a visa must be used and when the status that the person is in expires. And so it's unclear if Mr. Al-Mutarab understood the difference between these things. Kagan. Do you know any case law on this remedy question I'm asking? If we were in an in absentia situation, if the the on the face of things there's no evidence, does the Petitioner just win and walk home free and there's no removal order or is there a remand? And also, suppose that were the consequence. Could there be another NTA on the same issue or a correct issue, i.e., you overstage your visa no matter whether it was valid or whether you validly applied it or not and start all over again? Does it matter whether you do it one way or the other way as a practical matter? That's a lot of questions. Try to understand the remedy problem. Yes, Your Honor. You know, I think as a practical matter, you know, the government opted to move forward in this in absentia proceeding and to try to meet their burden by clear convincing and unequivocal evidence. And I think they failed to meet that burden. And because they made that decision, I think the remedy would then be to say you vacate the removal order. All right. Could they file another NTA tomorrow saying you overstayed your visa? I mean, if they had different evidence, perhaps they could. Could they? Well, they probably do have different evidence. Could they do that? I'm not sure of the answer to that, Your Honor. And does it have consequences of any kind depending on whether the NTA was now or back then? Does it not? Would it have any practical consequences? Suppose they could go ahead and do it again. Would that matter to your client or to them? I mean, would it matter for cancellation purposes, for example? It could, potentially, because the issuance dates. Because you'd go back. Absolutely. The time period would be different. Yes, absolutely. It matters the date the NTA was properly served for purposes of different kinds of removal. There's been no briefing on this remedy question, and it could be that there should be. So, okay. We can certainly do that, Your Honor. And then I'd just like to point out, as, you know, turning back to the issue about notice, and just to kind of reiterate the basic points in this case, it's clear he didn't have actual notice, and that's undisputed. And then there's clear evidence that he was never trying to thwart delivery or evade immigration. And I think that that is an important point. Is there any reason your client is better off with a ruling on the notice question than with a ruling on the merits question? Is there a reason he's better off? I mean, I think for purposes of this client, he's best off if the removal proceedings are terminated. I mean, ultimately, he, you know, has relief that he wanted to pursue and he's been trying to pursue for years now. So is it in the individual case? He ruled on the merits question in either direction, either with a remand or by simply granting the petition. In either event, he would either get a chance to do the relief or he wouldn't need the relief, one or the other. Yes. So there's no reason we're really we'd – if we thought that, we'd have to reach the notice issue. That's – I believe that's accurate. But if you remanded it and allowed him to present additional testimony and, you know, pursue the merits of his case, then, you know, that would be a satisfactory. Okay. Thank you very much. Thank you, counsel. Thank you. It's a much more complicated case than might first appear, and we were helped by the argument. So thank you very much.
judges: Tashima, Berzon, Smith